PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name  **Mirabal**        **Michael**        **R.**
       (Last)           (First)          (Initial)

Prisoner Number  **C-33639**

Institutional Address  **San Quentin State Prison, San Quentin, California, under California Department of Corrections Rehabilitation (CDCR)**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Michael Reyes Mirabal**          **CV 08        4038**
Full Name of Petitioner

                      Case No.(To be provided by the clerk of court)

**E-filing**

vs.

**Warden Robert Ayers** _____ PETITION FOR A WRIT OF HABEAS CORPUS
Name of Respondent
(Warden or jailor)

Read Comments Carefully Before Filling In

When and Where to File

    You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

    If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your

I

petition will likely be transferred to the district court for the district that includes the institution where you are confined.  Habeas L.R. 2254-3(b).

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1.    What sentence are you challenging in this petition?

(a)  Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

<u>SUPERIOR COURT OF CALIFORNIA</u>          <u>COUNTY OF LOS ANGELES</u>
Court                                         Location

(b)    Case number, if known  <u>A 353510</u>
(c)    Date and terms of sentence  <u>July 17 1981    15 years to Life</u>
(d)    Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) (Yes)    No

Where?  <u>SAN QUENTIN STATE PRISON    SAN QUENTIN, CALIFORNIA</u>
(Name of Institution)                  (Address)

2.    For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

<u>187 P.C. MURDER 2 ND DEGREE</u>

3.    Did you have any of the following?

Arraignment: Yes ✓ No ___  Preliminary Hearing: Yes ✓ No ___ Motion to Suppress: Yes ✓ No ___

3

4.    How did you plead?

Guilty ___✓___    Not Guilty _____    Nolo Contendere _____

Any other plea (specify) ___NO_____

5    If you went to trial, what kind of trial did you have?

Jury ___✓___    Judge alone _____    Judge alone on a transcript _____

6.    Did you testify at your trial?  Yes ✓ No __

7.    Did you have an attorney at the following proceedings: Yes

    (a)    Arraignment    Yes ✓    No __
    (b)    Preliminary hearing    Yes ✓    No __
    (c)    Time of plea    Yes ✓    No _
    (d)    Trial    Yes ✓    No __
    (e)    Sentencing    Yes ✓    No __
    (f)    Appeal    Yes ✓    No
    (g)    Other post-conviction proceeding    Yes ✓    No __

8.    Did you appeal your conviction?    Yes ✓ No __

    (a)    If you did, to what court(s) did you appeal?

| | | | (Year) | (Result) |
|---|---|---|---|---|
| Court of Appeal | Yes ✓ | No __ | 1981 | DENIED |
| Supreme Court of California | Yes __ | No ✓ | N/A | |
| Any other court | Yes __ | No ✓ | N/A | |

    (b)    If you appealed, were the grounds the same as those that you are raising in this petition?    Yes __ No ✓

    (c)    Was there an opinion?    Yes    No ✓

    (d)    Did you seek permission to file a late appeal under Rule 31(a)?    Yes    No ✓

4

If you did, give the name of the court and the result:

---

9.     Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?     Yes          No ✓

5

Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

(a)    If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.    Name of Court  SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

Type of Proceeding  WRIT OF HABEAS CORPUS

Grounds raised (Be brief but specific):

a.  Same as this petition.  Court order attached to

b.  this federal petition. SEE EXHIBIT "A"

c.  _____

d.  _____

Result  DENIED          Date of Result  5-1-2007

II.    Name of Court  SECOND APPELLATE DISTRICT DIVISION EIGHT

Type of Proceeding  WRIT OF HABEAS CORPUS

Grounds raised (Be brief but specific):

a.  SAME AS THIS PETITION. Court order attached

b.  to this federal petition. SEE EXHIBIT "B"

c.  _____

d.  _____

Result  DENIED          Date of Result  12-13-2007

III.    Name of Court  SUPREME COURT OF CALIFORNIA

6

Type of Proceeding _Writ of Habeas Corpus_____

Grounds raised (Be brief but specific):

a. _Same as this petition. Court order attached to this_

b. _Federal petition. SEE EXHIBIT "C"_____

c. _____

d. _____

Result _Denied_____ Date of Result _2-27-2008_

      (b)    Is any petition, appeal or other post-conviction proceeding now pending in any

court?    Yes __ No _✓_

_____

(Name and location of court)

B. GROUNDS FOR RELIEF

    State briefly every reason that you believe you are being confined unlawfully. Give facts to

support each claim. For example, what legal right or privilege were you denied? What happened? Who

made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you need

more space. Answer the same questions for each claim.

    Note: You must present ALL your claims in your first federal habeas petition. Subsequent

petitions may be dismissed without review on the merits. 28 U.S.C. § 2244(b); McCleskey v. Zant, 499

U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

    Claim One: _See attached Points and ATTORITIES_____

Supporting Facts: _SEE ATTACHED POINTS and ATTORITIES_

Claim Two: _____ // _____

Supporting Facts: _____ // _____

Claim Three: _____ // _____

Supporting Facts: _____ // _____

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

_____ N/A _____

8

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning of these cases:

_____

_____

_____

Do you have an attorney for this petition?     Yes __   No ✓

If you do, give the name and address of your attorney:

_____ N/A  But petitioner request Appointment
of counsel.

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

Executed on ___8/19/08_____        ___Michael Reyes Mirabal_____
               Date                                                      Signature of Petitioner

( rev. 5/96)

9

Exhibit "A"

ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS
SUPERIOR COURT     NO. BH004257

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| Date: | MAY 1 2007 | | | |
|---|---|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | J. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH004257
In re,
MICHAEL REYES MIRABAL,
                        Petitioner,
                                            Counsel for Respondent:
    On Habeas Corpus

Nature of Proceedings:  ORDER RE: WRIT OF HABEAS CORPUS

    The Court has read and considered petitioner's Writ of Habeas Corpus filed on May 30, 2006.  Having independently reviewed the record, giving deference to the broad discretion of the Governor in parole matters, the Court concludes that the record contains "some evidence" to support the Governor's finding that petitioner is unsuitable for parole (Cal. Code Reg. Tit. 15, §2402; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667 (hereafter *Rosenkrantz*).)

    Petitioner was received in the Department of Corrections on July 23, 1986 after a conviction for one count of second-degree murder.  He was sentenced to sixteen years to life.  His minimum parole eligibility date was December 14, 1992.  The record reflects that. Petitioner met the victim at a gay bar and accompanied him home.  At the victim's home, petitioner and his two crime partners began beating the victim.  One of the partners hit him over the head with a wine bottle.  The victim's hands and feet were tied with a telephone cord.  They then forced him to swallow sleeping pills.  One of his partner's attempted to strangle the victim, but was unable to kill him so petitioner placed a pillow over his head and sat on it until the man died.  Before fleeing, they stole several items of value from the home, including a television set and stereo.  The victim's car was also missing.  The cause of death was strangulation.

    The Governor is constitutionally authorized to make "an independent decision" as to parole suitability. (*Rosenkrantz, supra,* 29 Cal.4th 616, 670.)  Only a "modicum of evidence" is required.  (*Id.* at 677.)  Here, the Governor reversed the Board of Prison Term's ("Board") decision to grant petitioner parole because he concluded, "the gravity of the murder he committed currently outweighs the positive factors supporting his parole suitability."

    The Governor can properly rely upon the circumstances of the crime in deciding that petitioner is not presently suitable for parole.  (*Rosenkrantz, supra,* 29 Cal.4th 616, 683.)  The Court finds that there is some evidence to support the Governor's finding that "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering."  (Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(D).)  Callous disregard for human suffering is demonstrated when "death resulted from severe trauma inflicted with deadly intensity; e.g., beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or actions calculated to induce terror in the victim."  (*In re Scott* (2004) 119 Cal.App.4th 871, 891)  Here, the victim, who was outnumbered three to one, was brutally beaten and struck twice with a wine bottle.  His hands and feet were tied.  He was then strangled and suffocated with a pillow over

1

| Minutes Entered |
|---|
| 05-01-07 |
| County Clerk |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| | | | | |
|---|---|---|---|---|
| Date: | MAY 1 2007 | | | |
| Honorable: | STEVEN R. VAN SICKLEN | Judge | J. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH004257
In re,
MICHAEL REYES MIRABAL,
                    Petitioner,

On Habeas Corpus

Counsel for Respondent:

the face until he died. There is some evidence to support the Governor's conclusion that this murder was "extremely brutal."

Additionally, the Governor found that the petitioner continues to lack insight into the nature and magnitude of the offense. ." (Cal. Code Regs., tit. 15, §2402, subd. (d)(3).)  Petitioner's explanations as to his involvement in the crime have changed for each parole suitability hearing.  There is some evidence to support the Governor's conclusion that since he has not gained insight into how horrendous the murder was, he poses an unreasonable risk of danger to society.

Accordingly, the petition is denied.

The court order is signed and filed this date.  The clerk is directed to give notice.

A true copy of this minute order is sent via U.S. Mail to the following parties:

Law Office of Michael Satris
Michael Satris, Esq.
Margaret Littlefield, Esq.
P.O. Box 337
Bolinas, CA 94924
Attorneys for Petitioner Michael R.  Mirabal

Department of Justice
Office of the Attorney General of the State of California
Gregory J. Marcot, Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA 92101

2

Minutes Entered
05-01-07
County Clerk

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp<br>CONFORMED COPY<br>OF ORIGINAL FILED<br>Los Angeles Superior Court |
|---|---|
| COURTHOUSE ADDRESS:<br>Clara Shortridge Foltz Criminal Justice Center<br>210 West Temple Street<br>Los Angeles, CA 90012 | JUN 2 7 2007 |
| PLAINTIFF/PETITIONER:<br><br>MICHAEL REYES MIRABAL | John A. Clarke, Executive Officer/Clerk<br>By _____, Deputy<br><br>Joseph M. Pulido |
| **CLERK'S CERTIFICATE OF MAILING**<br>CCP, § 1013(a)<br>Cal. Rules of Court, rule 2(a)(1) | CASE NUMBER:<br>BH004257 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

- ☐ Order Extending Time
- ☐ Order to Show Cause
- ☐ Order for Informal Response
- ☐ Order for Supplemental Pleading
- ☑ Order re: Writ of Habeas Corpus
- ☐ Order
- ☐ Order re:
- ☐ Copy of Petition for Writ of Habeas Corpus for the Attorney General

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to the cause. I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

June 27, 2007
DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: _Joseph M. Pulido_ , Clerk
          Joseph M. Pulido

Law Office of Michael Satris
Michael Satris, Esq.
Margaret Littlefield, Esq.
P.O. Box 337
Bolinas, CA 94924
Attorneys for Petitioner Michael R. Mirabal

Department of Justice
Office of the Attorney General of the State of
California
Gregory J. Marcot, Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA 92186-9961

Exhibit "B"

ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS
COURT OF APPEAL OF THE STATE
OF CALIFORNIA SECOND
APPELLATE DISTRICT DIVISION EIGHT
NO. B201972

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

In re

MICHAEL REYES MIRABAL

on Habeas Corpus.

B201972

(Super. Ct. No. BA004257)

(Steven R. Van Sicklen, Judge)

ORDER

COURT OF APPEAL - SECOND DIST.

F I L E D

DEC 1 3 2007

JOSEPH A. LANE          **Clerk**

C. HON
                        **Deputy Clerk**

THE COURT*:

    We have read and considered the petition for writ of habeas corpus filed on September 11, 2007. We have also reviewed the Superior Court file in Case No. BH004257.

    The petition is denied.

_____          _____          _____
*COOPER, P.J.                    RUBIN, J.                    EGERTON, J.*

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Exhibit "C"

ORDER  DENYING PETITION
FOR WRIT OF  HABEAS CORPUS
SUPREME COURT OF CALIFORNIA
NO. S159379

Court of Appeal, Second Appellate District, Div. 8 - No. B201972
S159379

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

In re MICHAEL REYES MIRABAL on Habeas Corpus

The petition for review is denied.

George, C.J., and Corrigan, J., were absent and did not participate.

SUPREME COURT
**FILED**

FEB 2 7 2008

Frederick K. Ohlrich Clerk

_____
Deputy

_____BAXTER_____
Acting Chief Justice

Mr. Michael Reyes Mirabal, C-33639
CSP-SQ 1-N-11-U
San Quentin, CA 94974
    Petitioner In Pro. Per.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL REYES MIRABAL
               Petitioner

    v.

Robert Ayers, (Warden San Quentin State Prison)
               Respondent

No. _____ _____

POINTS AND AUTHORITIES IN SUPPORT OF THE PETITION FOR WRIT OF

HABEAS CORPUS

## TOPICAL INDEX

TABLE OF AUTHORITIES ...........................................................................i

THE GOVERNOR'S ORDER RESCINDING PETITIONER'S
RELEASE DATE VIOLATES PETITIONER'S CONSTITUTIONAL
LIBERTY INTEREST TO PAROLE.............................................................1

CONCLUSION...................................................................................20

# TABLE OF AUTHORITIES

Federal Cases

*Biggs v. Terhune* (9th Cir. 2003)
    334 F.3d 910 ....................................................................7, 11, 12

*Coleman v. Board of Prison Terms* (2005)
    2005 WL 4629202 ....................................................................16

*Coleman v. California Board of Prison Terms* (9th Cir. 2007)
    228 Fed. Appx. 673....................................................................17

*Hicks v. Oklahoma*  (1980)
    447 U.S. 343.................................................................... 12-13

*Irons v. Carey* (9th Cir. 2007)
    479 F.3d 658 ....................................................................7

*McQuillion v. Duncan* (9th Cir. 2002)
    306 F.3d 895 ....................................................................16

*Sass v. Board of Prison Terms* (9th Cir. 2006)
    461 F.3d 1123 ....................................................................12

*Superintendent v. Hill* (1985)
    442 U.S. 445....................................................................12

State Cases

*In re Andrade* (2006)
    141 Cal.App.4th 807....................................................................10, 18

*In re Barker* (2007)
    151 Cal.app.4th 346 ....................................................................6

*In re Caswell* (2001)
    92 Cal.App.4th 1017....................................................................16

*In re Cooper* (2007)
   153 Cal.App.4th 1043 ..................................................... 5-6

*In re Elkins* (2006)
   144 Cal.App.4th 475 ...........................................................6

*In re Gray* (2007)
   151 Cal.App.4th 379 ........................................................6, 16

*In re Hochberg* (1970)
   2 Cal.3d 870 .........................................................................6

*In re Jacobson* (2007)
   __ Cal.App.4th __, 2007 WL 2420675 .......................................6

*In re Lawrence* (2007)
   150 Cal.App.4th 1511 ...................................................6, 7, 18

*In re Lee* (2006)
   143 Cal.App.4th 1400 ...............................................6, 7, 11, 19

*In re Minnis* (1972)
   7 Cal.3d 639 .........................................................................12

*In re Ramirez* (2001)
   94 Cal.App.4th 549 ...........................................................10, 12

*In re Roderick* (2007)
   __ Cal.App.4th __, 2007 WL 2343737 .......................................5

*In re Rosenkrantz* (2002)
   29 Cal.4th 616 ............................................ 6, 9, 10, 12, 13, 17

*In re Scott* (2004)
   119 Cal.App.4th 871 .............................................................19

*In re Scott* (2005)
   133 Cal.App.4th 573 ........................................................9, 10, 19

iii

*In re Tripp* (2007)
      150 Cal.App.4th 306 ..............................................................6, 10

*In re Weider* (2007)
      145 Cal.App.4th 570 .....................................................................6

*Terhune v. Superior Court* (1998)
      65 Cal.App.4th 864 .....................................................................12

California Statutes

      Penal Code § 3041 ..................................... 12, 13, 14, 15, 17, 19
             § 3041 (a).......................................................11, 19
             § 3041 (b) ............................................................11

California Code of Regulations

      Title 15, Division 2, chapter 3, article 11 .................................13
      Title 15, § 2280 ........................................................................13
      Title 15, § 2281 .................................................................14, 15
      Title 15, § 2403 ....................................................................1, 7
      Title 15, § 2410 ........................................................................1

California Rules of Court

      Rule 8.380 (b) ...........................................................................4,

Miscellaneous

Doris Tate Crime Victims Bureau, Link *"Parole Board Crisis"*
      http://www.doristate.com/new_page_7.htm ............................19

Mr. Michael Reyes Mirabal, C-33639
CSP-SQ 1-N-11-U
San Quentin, CA 94974

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL REYES MIRABAL<br>                    Petitioner<br><br>      v.<br><br>Robert Ayers, (Warden San Quentin State<br>Prison)<br>                    Respondent | No. _____ |

### THE GOVERNOR'S ORDER RESCINDING PETITIONER'S RELEASE DATE VIOLATES PETITIONER'S CONSTITUTIONAL LIBERTY INTEREST TO PAROLE

1.     Petitioner Michael Reyes Mirabal is a prisoner of the State of California,

incarcerated at San Quentin State Prison, San Quentin, California, under Department of

Corrections number C33639, by Warden Robert Ayers.

2.     Mirabal, now 52 years old, was committed to prison for a term of 15 years

to life (with parole eligibility after ten years) following a plea of guilty to second degree

murder for a homicide that occurred on August 28, 1979.  In December of 2005, the

Board of Parole Hearings ("Board"), granted him a parole date, making him due for

release twelve years earlier on July 16, 1993, but Governor[1]

---

[1]   This release date, which reflects the uniform and proportionate term of punishment for the type and nature of the offense committed by Mirabal, becomes earlier the longer Mirabal remains in prison based on this earning of post-conviction credits.  (See California Code of Regulations, title 15, sections 2403, 2410.)

1

Schwarzenegger reversed the parole grant on May 26, 2006, despite the facts that:

- The commitment offense of *second degree murder* is Mirabal's single act of criminal violence and had occurred 27 years before the reversal, more incarceration time than would have been imposed for a *first degree murder*;

- His juvenile record consists of but one minor non-violent offense for which he received probation.

- He has no adult criminal record outside the commitment offense.

- He grew up in an intact, middle class family, and was married and working until a few months before the life offense.  In those few months after he separated from his wife and his church, his mother had surgery and he moved across the country to care for her; stresses regarding his sexual identity that had built up over a period of time as well as that of losing family and religious structure, combined with substance abuse, culminated in the life offense.

- The influence of alcohol and Quaaludes at the time of the offense reduced his culpability.

- His present age of 52 reduces the probability of reoffense.

- He has expressed remorse for his crime and assumes full responsibility for having committed it.  As Mirabal explained to the psychological evaluator in 2005, "I think of [the victim] in a different light.  I think about his family. ... His being a human being gave him a right to live his life how he wanted to do it.  I took that away from him.  I took him away from his family."

- He has been disciplinary-free since 1985, and has never had a violent disciplinary.

- He has advanced educationally and vocationally during his confinement, developing several trades and obtaining average to exceptional work reports.

- He has assiduously addressed the causative factors of his criminal conduct, including any prior sexual confusion and his substance abuse, through numerous therapeutic self-help groups. He has an Axis I diagnosis of "Poly-Substance Dependence" is in full institutional remission, and no Axis II diagnosis. A 2000 psychiatric evaluation opined that Mirabal "would be unlikely … [to] behave violently if released … [and] [h]is violence potential is no greater than the average citizen." In 2005 the psychological evaluator stated that "Mr. Mirabal has been in remission from his polysubstance dependence for over twenty five years. The length of remission is a good prognostic factor in continued remission from drugs and alcohol. Mr. Mirabal's prognosis would be good if he were to continue with treatment and be in a supportive environment." That evaluator further concluded that "there are many more risk factors which lower [Mirabal's] risk of violence than raise the risk[,]" and that "to a reasonable degree of medical probability, … Mr. Mirabal's risk of violence in the community is low to low moderate."

- He has been married for 28 years to his successful wife, Silvia, a real estate professional, and has substantial family backing that includes an available residence, financial support, and good prospects for employment.

3. The refusal of the State of California to parole Mirabal is emblematic of its refusal to parole the overwhelming majority of murderers despite the legislative assumption and expectation that a parole date would "normally" be set at a life prisoner's first parole consideration hearing, and the principles of the indeterminate sentencing law that contemplate parole as the commitment offense recedes in time and rehabilitation is demonstrated. The Governor's

3

reversal of Mirabal's grant of parole is part of this pattern, reflects his bias against the granting of parole to life prisoners who would not constitute an unreasonable threat of danger to the public if released, and is unsupported by some evidence. The Governor's reversal also violates the proscription on ex post facto laws, Mirabal's agreement to plead guilty to second degree murder, and the proscription against cruel and unusual punishment.

4. Mirabal has previously filed three petitions in Los Angeles County Superior Court that challenged four State refusals to parole him (three by the Board, one by the Governor) as, *inter alia*, unsupported by the evidence, as well as based on executive bias and its practice of parole denial for almost all lifers, in violation of state and federal due process. (*In re Mirabal*, Case No. BH001852, order denying petition filed April 24, 2002, *In re Mirabal*, Case No. BH002556, order denying petition filed February 24, 2005, and *In re Mirabal*, Case No. BH004257, order denying petition filed June 27, 2007.) Mirabal realleges and incorporates the allegations of his latest trial court petition by reference to that petition. The trial court petition is attached as Exhibit A, pages 1064, in the Appendix lodged with this petition. Mirabal requests, pursuant to California Rules of Court, rule 8.380 (b), that the Court order the Clerk of the Los Angeles County Superior Court to transmit to this Court the original superior court file, or a certified copy thereof, in *In re Mirabal*, Case No. BH004257, which include all exhibits filed by Mirabal in the superior court including the transcript of the hearing in which the Board granted him parole and the Governor's decision reversing that

grant.[2] In these proceedings Mirabal will refer to the trial court petition Appendix page numbers when applicable as TC Appendix.

    5. Mirabal here seeks relief that includes his immediate release from prison, as well as a declaration of rights directing the parole authority to cease its lawless practice of rarely granting parole and to adhere to its lawful duty to regularly grant parole when fair and individualized consideration of all the prisoner's individual circumstances show that his release would not pose an unreasonable risk to public safety. (See Prayer for Relief, Appendix, p. 40 and additional prayer, *post*, p. 20.)

    6. On June 27, 2007, the trial court served an order in which it denied Mirabal's latest petition. (See copy of order denying relief, Appendix, pp. 70-72, Exh. C.) In that decision the court addressed only Mirabal's claim in the petition that there was no evidence that his parole would unreasonably threaten public safety, and failed entirely to acknowledge or address Mirabal's other claims. (*Ibid.*) The court found that some evidence supported the Governor's conclusion that the offense was extremely brutal, or "carried out in a manner which demonstrates an exceptionally callous disregard for human suffering." (*Ibid.*) This decision was erroneous, particularly in light of several recent appellate court decisions, some of which bear indication of recent California Supreme Court approval, including: *In re Roderick* (2007) __ Cal.App.4th __, 2007 WL 2343737; *In re Cooper* (2007)

_____

[2] See also, prayer for relief at page 20, *post*. For the Court's convenience Mirabal has attached the Governor's reversal letter as Exhibit B in the Appendix.

5

153 Cal.App.4th 1043; *In re Gray* (2007) 151 Cal.App.4th 379; *In re Barker* (2007) 151 Cal.app.4th 346, *In re Lawrence* (2007) 150 Cal.App.4th 1511; *In re Weider* (2007) 145 Cal.App.4th 570; *In re Elkins* (2006) 144 Cal.App.4th 475; *In re Lee* (2006) 143 Cal.App.4th 1400. Although the appellate courts also recently decided *In re Jacobson* (2007) __ Cal.App.4th __, 2007 WL 2420675, and *In re Tripp* (2007) 150 Cal.App.4th 306,[3] the weight of authority and indications from the California Supreme Court indicate its approval of the first set of cases.[4] Those stand for principles that evidence supporting only an illustrative circumstance of a factor that the crime

---

[3] The briefing in the superior court was completed before any of these cases was decided; the trial court's decision was written before half of them were decided.

[4] The California Supreme Court granted review and issued an order to show cause returnable before the court of appeal in *In re Singler,* order filed April 25, 2007, No. S150139, see Appendix, pp. 94-95, Exhibit F, in which it cited not only *In re Rosenkrantz* (2002) 29 Cal.4th 616, but also *Elkins*, *Lee*, and *Scott II*. That order constituted the High Court's preliminary determination that Singler was entitled to release under the cited authorities. (See, e.g., *In re Hochberg* (1970) 2 Cal.3d 870, 875 ["Our issuance of an order to show cause returnable before a lower court is an implicit preliminary determination that the petitioner has made a sufficient prima facie statement of specific facts which, if established, entitle him to habeas corpus relief under existing law."].) The Supreme Court denied the State's requests for review and depublication in *Scott II* and *Elkins,* and denied the State's request for depublication in *Lee,* S149411. (Appendix, pp. 96-98.) The Supreme Court has denied the State's requests for stays of the release orders in *In re Lawrence,* S154018 and *In re Cooper,* S155130. (Appendix, pp. 99-100.) The Supreme Court did, however, also deny the petitioner's petition for review and request for depublication in *In re Tripp,* S152032. (Appendix, pp. 101-102.)

6

was especially heinous, atrocious or cruel[5] — a factor that could
"tend" to show unsuitability for parole (Cal. Code Regs., tit. 15,
§ 2403) — is not necessarily some evidence that Mirabal presents an
unreasonable threat of danger to the public if released on parole. (See
*In re Lee, supra,* 143 Cal.App.4th at 1409, *In re Lawrence, supra,* 150
Cal.App.4th at 1558; see also *Biggs v. Terhune* (9th Cir. 2003) 334
F.3d 910, 916-917, and *Irons v. Carey* (9th Cir. 2007) 479 F.3d 658.)
The trial court in Mirabal's case found only that there was some
evidence of an immutable factor of the offense tending to show
unsuitability, which in the context of all factors to be considered is not
some evidence that it Mirabal remains a threat to the public.  As the
court in *Lawrence* emphasized after listing seven state or federal court
cases where the Board's or Governor's refusal to parole a prisoner
based on the seriousness of the commitment offense:

> In those cases, as here, the Board or the Governor
> labeled the murders in terms similar to the
> Governor's "shockingly vicious use of lethality" and
> "exceptionally callous disregard for human
> suffering" description of Lawrence's commitment
> crime. Nonetheless, our fellow state appellate courts
> or federal courts found crimes so described as
> inadequate to provide the sole or primary "some
> evidence" of *present* dangerousness some 15 to 20
> years later, at least when in the meantime the
> prisoner had an exemplary record in prison.

(*Ibid.*)

---

[5] The Governor never concluded or made a finding that the offense was
committed in an "especially heinous, atrocious or cruel manner." He only
mentioned a factor that could support such a finding, if made.

7

7. The trial court in Mirabal's case also found some evidence to support the Governor's conclusion that Mirabal lacks insight into the nature and magnitude of the offense, based on the purported fact that "Petitioner's explanations as to his involvement in the crime have changed for each parole suitability hearing," and that such constitutes evidence that Mirabal continues to pose an unreasonable risk of danger to society. (Appendix, p. 71.)[6] Mirabal explained to the Board at the hearing when it granted him parole that gaining full understanding of the causes and magnitude of his offense and his role in it had been a process of progressively peeling off layers over years and years of self-help therapy as he accessed memories and connected them to the offense. (Appendix, pp. 17-18.) The Board was able to assess Mirabal's demeanor, sincerity, and veracity as a witness, correctly found him to be genuine and honest, and correctly concluded that his understanding of the gravity and magnitude of the offense, and his role in it, was substantial and that Mirabal had insight into its causes. Mirabal has deeply grasped the gravity of the offense, is very remorseful for it, and has gained an integrated insight regarding several causative factors. Any inconsistencies from Mirabal regarding the offense are the product of his progression in gaining insight, and do not provide some evidence of a lack thereof that might show that Mirabal presents an unreasonable risk of danger to the public. The Board's findings that Mirabal understands the nature and gravity of the offense are bolstered by the fact that prior evaluators have

_____

[6] The trial court's statement that Mirabal's statements regarding the offense changed at every parole hearing is a gross exaggeration.

8

concluded that his intoxication at the time of the offense and his idiosyncratic manner of communicating, made it difficult for him to accurately convey what happened. (See TC Appendix, 119.)

8. The trial court failed to recognize that the Governor did not consider the substantial, building and multiple stresses Mirabal suffered at the time of the offense, a failure that more than one California court of appeal has found to constitute a violation of due process, see, e.g., *In re Scott* (2005) 133 Cal.App.4th 573, 596 ("*Scott II*"), quoting with emphasis *In re Rosenkrantz, supra*, 29 Cal.4th at 679.) The Governor referred superficially and dismissively to only one aspect of the stress Mirabal experienced, i.e., sexual confusion, and completely ignored the evidence in the record of the duration and depth of that major stress, as well as others of at least some months' duration that Mirabal underwent in the months leading up to the offense. (Appendix, pp. 68-69.) These included divorce, loss of his church, rejection of a proposal of marriage, a move across the country to Los Angeles, his mother's surgery, and a lack of employment. All of this constituted substantial stress that had mounted and built over time before the offense, sufficient to mitigate it, that was ignored by the Governor. (Appendix, pp. 16, 19, 22-23.) The trial court additionally failed to consider Mirabal's argument that since his minimum parole period for second degree murder occurred 16 years ago, continuous reliance on the static facts of the commitment offense to deny parole, in light of at least two decades of demonstrated rehabilitation, denies Mirabal due process under the federal

9

constitution and violates the principles of the indeterminate sentencing law. (Appendix, pp. 42-46, 70-72.)

10. "Denial of release solely on the basis of the gravity of the commitment offense warrants especially close scrutiny." (*Scott II, supra*, 133 Cal.App.4th at p. 595; accord, *In re Andrade* (2006) 141 Cal.App.4th 807, 820 (conc. & dis. opn. of Pollak, J.); *In re Tripp, supra*, 150 Cal.App.4th at 320). This is because the potential for unfairness is great when parole is denied based on long past immutable facts, since parole — after all — is designed to acknowledge the reform and rehabilitation of the prisoner who evidences positive change since commission of the offense. (*Ibid.*) As our High Court has cautioned:

> In some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation – for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense .... "The Board's authority to make an exception to the requirement of setting a parole date based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted .... Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date."

(*In re Rosenkrantz* (2002) 29 Cal.4th 616, 683, quoting *In re Ramirez* (2001) 94 Cal.App.4th 549, 570) (brackets in *Rosenkrantz* deleted).)

10

11. Another circumstance in which reliance on the offense to deny parole violates due process is when such reliance is made in the face of longstanding "exemplary behavior and evidence of rehabilitation," since that "runs contrary to the rehabilitative goals espoused" by California law. (*Biggs v. Terhune, supra*, 334 F.3d at 916-917.) This is especially so where that showing of post-conviction progress and rehabilitation is coupled with a showing of pre-conviction prosocial conforming conduct. (See, e.g., *In re Lee, supra,* 143 Cal.App.4th at 1409 [though prisoner found guilty of attempted premeditated murder (after two shots hit the intended victim) and second-degree murder (after another shot hit and killed an unintended victim), fact of multiple victims did not constitute some evidence to show prisoner continues to pose an unreasonable risk to public when "view[ed] ... within the context of the other factors [the authority must] consider"].) Under these principles there is no evidence to support the Governor's finding that Mirabal remains an unreasonable threat of danger to the public if released on parole.

12. In all regards, the trial court ignored the legislative intent that section 3041, subdivision (b), which speaks to a continuing public safety risk based on the timing and gravity of current offense[s] and past offense[s], if any, is informed by subdivision (a) of that section. The latter indicates a legislative intent that parole shall normally be granted at the initial parole suitability hearing, and a concomitant intent that as the offense recedes further in the background and a prisoner's conduct and engagement in programs and therapy progresses and is maintained, year after year, the predictive value of

11

(1980) 447 U.S. 343, 346; ["arbitrary disregard" of the state law establishing the manner of punishment violates the "petitioner's right to liberty [and] is a denial of due process of law"].) The following provides further support for Mirabal's contentions.

14. Shortly after section 3041 was enacted and pursuant to that section's directive that the Board establish criteria for determining parole release, it promulgated regulations contained in division 2, chapter 3, article 11 of the California Code of Regulations, title 15. (See generally *In re Rosenkrantz, supra*, 29 Cal.4th at 653-654.) Following this directive, the Board continued its practice developed after administrative reforms in 1976 to regularly set parole dates for most prisoners and to defer the setting of a parole date only in the exceptional case where the individual prisoner posed an unusual or unreasonable risk. For example, in Register 77, No. 28, the Board adopted rules and regulations implementing Penal Code section 3041 when it became operative on July 1, 1977, that included California Code of Regulations, title 15, section 2280: "A life prisoner shall be considered for parole for the first time at the initial parole consideration hearing. At this hearing, a parole date shall normally be set ...." (Appendix, 73-81, esp. p. 74, Exhibit D.)

15. It further directed:

> In considering a life prisoner for parole, the first determination is whether the prisoner will at some time in the future be suitable for release. The panel should consider: factors which affect the severity of the offense; whether an unreasonable risk of danger to society would be posed by release; and, any

13

conditions of parole, under which the prisoner could
safely be released to the community.

In making this determination, the hearing panel
shall analyze the elements of the crime and the
prisoner's culpability in the offense as evidenced by
the manner in which the offense occurred. The
hearing panel shall also consider factors relating to
the prisoner and his apparent potential for future
harm, considering the prisoner's preconviction and
postconviction behavior.

(*Ibid.*)

16. The unsuitability exception was a limited one. Former
California Code of Regulations, title 15, section 2281 quoted the
language of Penal Code section 3041, and elaborated on it thusly:

Unsuitability. In determining whether a
prisoner is unsuitable for release, the hearing
panel shall consider whether the public
safety requires a more lengthy period of
confinement because of the timing and
gravity of the current offense or past
offenses, if any, of which the prisoner was
convicted…. Examples of factors indicating
unsuitability include:

(a) A history of violent conduct
resulting in serious bodily injury, great
bodily injury, or death.

(b) A persistent pattern of serious
criminal behavior and a failure to
demonstrate evidence of a substantial
change for the better.

(c) The presence of a mental or
emotional disorder related to the prisoner's
criminality which creates a high likelihood

14

that new serious crimes will be committed if
the prisoner is released.

(*Ibid.*)

17. As public attitudes changed beginning in 1978 (see Exhibit
A, p. ) to that of "lock 'em up & throw away the key," ultimately
reflected in the enactments of laws like Three Strikes, the Board
amended its regulations to do away with the mandate to normally set a
parole date, and evolved its practice to the point that today it ignores
the careful balance established by the Legislature to achieve uniform
terms without sacrificing public safety when the parole of an
individual would unreasonably threaten it.

18. That evolution started in 1979, Register 79, No. 24 when
— in conflict with the directive of section 3041 — the Board deleted
its regulation that parole normally be granted at the initial suitability
hearing, leading to the present guiding regulation in California Code
of Regulations, title 15, section 2281, which provides:

> Regardless of the length of time served, a life
> prisoner shall be found unsuitable for and denied
> parole if in the judgment of the panel the prisoner
> will pose an unreasonable risk of danger to society
> if released from prison.

19. Over time, the authority replaced the practice implementing
the legislative design for the early setting of parole dates for most life
prisoners, with its own design driven by its personal and political
determination that almost all murderers and other life offenders
should be incarcerated for the rest of their lives. Beginning in the
1990s the authority implemented a new philosophy and policy, which

15

was to deny parole to prisoners who had not yet been granted parole
and to rescind existing grants of parole as "mistaken." (*See, e.g., In re
Caswell* (2001) 92 Cal.App.4th 1017, 1030-1031 [four of five bases
for rescission found arbitrary]; *McQuillion v. Duncan* (9th Cir. 2002)
306 F.3d 895 [rescission action lacked evidentiary support]; *In re
Gray, supra,* 151 Cal.App.4th at 385 ["In 1993, ...[a prior board[]
found Gray suitable for parole.  In 1997, a prior board rescinded the
1993 parole suitability determination."].)

     20.  As found in *Coleman v. Board of Prison Terms,* 2005 WL
4629202 at *2, based on "[t]he unrefuted record":

> [U]nder Governors Wilson and Davis the Board
> disregarded regulations ensuring fair suitability
> hearings and instead operated under a sub rosa
> policy that all murderers be found unsuitable for
> parole.  The record shows that between 1992 and
> 1998 less than one percent of the prisoners in this
> group were released on parole.  During the previous
> period the parole rate had been about four percent.
> Petitioner presents sworn testimony that the policy
> was enforced by (1) appointing Board members less
> likely to grant parole and more willing to disregard
> their statutory duty; (2) removing Board members
> more likely to grant parole; (3) reviewing decisions
> finding a prisoner suitable and setting a new hearing
> before a different panel; (4) scheduling rescission
> hearings for prisoners who had been granted a
> parole date; (5) re-hearing favorable rescission
> proceedings and hand-picking panels to ensure the
> desired outcome; (6) panel members agreeing upon
> an outcome in advance of the hearing; and (7)
> gubernatorial reversal of favorable parole decisions.
> *See e.g.,* declaration of former BPT Commissioner
> Albert Leddy (Leddy) paras. 5, 6, 8-17, 20 (attached
> as Ex. 17 to petitioner's March 27, 2003, motion for

16

discovery); deposition of Leddy taken in *In re Fortin, et al.,* San Diego Superior Court case number HSC10279 at 18-19, 47-50, 56-59, 61-63, 65-66, 88-89, 95, 97-99, 102, 106, 110, 118 & 126 (attached as Ex. 10 to petitioner's March 27, 2003, motion for discovery); deposition of former BPT Commissioner Edmund Tong taken in *Kimble v. Cal. BPT,* C.D. Cal. case number CV 97-2752 at 42-43, 45-47, 71, 73, 80-82, 85-86, 96, 103, 105, 107 & 109 (lodged December 30, 2003).[7]

21.  The State actually releases a miniscule number of eligible lifers on parole.  (See, e.g., *In re Rosenkrantz,* 29 Cal.4th at 685 [Board granted parole to murderers 1% of time in its last 4800 hearings to April 2001]; see also TC Appendix, pp.177-229, and Appendix, pp. 82-93, Exh. E [statistics on the executive practice of parole consideration from 1995 through June 2006].)

22.  When the Board finally does grant a prisoner a parole date, he is usually long past not only his minimum parole eligibility date, but the parole release date that the Board has calculated for him, so that even these prisoners are spending years more in prison than called for by the uniform and proportionate term of imprisonment envisioned by section 3041.  Mirabal, who remains confined despite a belated

---

[7]  As the *Coleman* court further found in fn. 2:

> "Meanwhile, the annual cost to taxpayers of conducting these "pro forma [no parole]" hearings is enormous, amounting to millions of dollars per year.  [Citation.]"

A copy of *Coleman* is found at TC Appendix, pp. 267-279; a copy of the California Legislative Analyst's Office Analysis of the 2000-01 Budget Bill for the Board of Prison Terms is found at TC Appendix, pp. 241-245. *Coleman's* findings are unimpeached, for the state's appeal was dismissed on April 6, 2007.  (See *Coleman v. California Board of Prison Terms* (9th Cir. 2007) 228 Fed. Appx. 673.)

17

grant of parole to him by the Board in 2005, had a parole date in mid-1993 and is a perfect example of that; see also *In re Lawrence, supra,* 150 Cal.App.4th at p. 1550 ["By this time, like Lawrence, Elkins was far beyond his parole date as computed by the applicable matrix."].) Once the Board rarely and belatedly grants parole, the Governor reverses 90% of those grants. Consequently, the parole authority has returned to its old, discredited, and unreformed ISL practice of randomly determining the suitability of an individual prisoner for parole, resulting in disparate and unpredictable terms that fail to provide for uniformity and proportionality of punishment.

23. This evolution of practice divorced from the law is at the point where "California parole authorities are losing sight of the fact that 'release on parole is the rule, rather than the exception.' [Citation.]" (*In re Andrade, supra,* 141 Cal.App.4th at 823, conc. & dis. opn. of Pollak, J.) For example, the authority has a practice of virtually *universal* denial of parole at the initial parole consideration hearing. (See Appendix, pp. 92-93, Exh. E [showing that the Board found only eight inmates suitable for parole at initial parole consideration hearings held from January 1, 2002 to December 31, 2006, and at least six of those eight inmates found suitable for parole at their initial parole hearing had their grants either rescinded by the Board or reversed by the Governor].) The authority now paroles only a miniscule percentage of murderers each year, for — as here — the Board sets parole dates for only a very small percentage of eligible candidates no matter how long they have been incarcerated and the Governor routinely reverses approximately 90% of them. (*Ibid.*; and

18

see Appendix, pp. 103-121, Exhibit G [containing statistics on Board grants and Governor reversals].)

24. At this point, the parole process has become hopelessly politicized, with parole board members being forced off the Board if they show any inclination to grant more than a few parole dates, and the Governor yielding to pressure to 1) appoint to the Board individuals unlikely to grant more than a few parole dates, and 2) maintain a high reversal rate of even those grants. (See webpage for Doris Tate Crime Victims Bureau, Link to its Page *"Parole Board Crisis"* [http://www.doristate.com/new_page_7.htm], Appendix, pp. 122-134, Exh. H, including statement of Bilenda Harris-Ritter, a former Board Commissioner recently forced off the Board by a victim right's group and the Governor's office for implementing the legislative directive of section 3041 and granting parole to a few prisoners in three months). Consequently, the authority routinely denies parole "until [the prisoner] dies or is rendered helpless by the infirmities of sickness or age." (*In re Scott, supra,* 133 Cal.App.4th at 595).[8] In sum, the authority's current practice is "making a mockery of the legislative declaration that life prisoners are 'normally' entitled to receive a parole date shortly before they first become eligible for parole." (Pen. Code, § 3041, subd. (a); *In re Scott* (2004) 119 Cal.App.4th 871, 894.) As the legislative analyst has put it, the

---

[8] Even in the latter case the authority may deny parole. (*See, e.g., In re Lee, supra,* 143 Cal.App.4th at p. 1409 ["Weakened by the march of time trod by all mortals, Lee is now 82 years old and in poor health, leaving him to hobble from room to room," but the Governor nevertheless reversed a grant of parole to him].)

19

authority administers the parole law by providing "process without possibility of parole."

(TC Appendix, p. 241.)

CONCLUSION

WHEREFORE, for all the reasons set forth above, Mirabal prays for the relief he sought

in the trial court.  (See Exh. A,. p. 40.)  Mirabal additionally prays for such other and

further relief as this court deems just and appropriate under the circumstances

(Hayward v Marshall, 512 F. 3rd  536).


Dated this 19th day of August, 2008 at San Quentin CA


Respectfully


Michael Reyes Mirabal
        Petitioner In Pro. Per.

20

Michael Reyes Mirabal    C-33639
SAN Quentin State Prison    I-N-11⁰⁰
San Quentin, CA. 94974

Aug. 19, 2008

**CV 08    4038**

**MMC**
**(PR)**

Dear U.S. Court Clerk,

Enclosed is a self addressed stamped envelope. Please send me a filed stamped copy upon filing and return. Five dollar ($5.00) is on it way separately. TRUST WITH OFFICE TAKE CARE OF IT HERE.

In Christ,
Michael Reyes Mirabal

CLOSED, E-Filing, HABEAS

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:06-cv-02257-MMC
### Internal Use Only

Mirabal v. Ornoski
Assigned to: Hon. Maxine M. Chesney
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 03/29/2006
Date Terminated: 04/27/2007
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Petitioner**

**Michael Reyes Mirabal**

represented by **Margaret Joan Littlefield**
Law Offices of Michael Satris
PO Box 337
Bolinas , CA 94924
(415) 868-9209
Fax: (415) 868-2658
Email: satris@sbcglobal.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Satris**
Law Offices of Michael Satris
Post Office Box 337
230 Larch Road
Bolinas , CA 94924
415-868-9209
Fax: 415-868-2658
Email: satris@sbcglobal.net
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Warden S.W. Ornoski**

represented by **Patricia Webber Heim**
CA State Attorney General's Office
1300 I Street, Suite 125
P.O. Box 944255
Sacramento , CA 94244-2550
916-324-5263
Fax: 916-322-8288
Email: Patricia.Heim@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/29/2006 | 1 | PETITION for Writ of Habeas Corpus (Filing fee $ 5.00., receipt number 3383722). Filed by Michael Reyes Mirabal. (aaa, Court Staff) (Filed on 3/29/2006) Additional attachment(s) added on 4/11/2006 (aaa, Court Staff). (Entered: 03/30/2006) |

| 03/29/2006 | | CASE DESIGNATED for Electronic Filing. (aaa, Court Staff) (Filed on 3/29/2006) (Entered: 03/30/2006) |
|---|---|---|
| 04/10/2006 | 2 | CLERK'S NOTICE to Petitioner(s) Attorney(s) by e-mail re: Failure to E-File/E-Mail Petition and/or Failure to Register as an E-Filer (aaa, Court Staff) (Filed on 4/10/2006) (Entered: 04/10/2006) |
| 06/15/2006 | 3 | ORDER TO SHOW CAUSE. The Clerk of the Court shall serve by certified mail a copy of this order and the petition, along with all attachments thereto, upon respondent and respondent's attorney, the Attorney General for the State of California. Respondent shall file with the Court and serve on petitioner, within 60 days of the date this order is filed, an answer conforming in all respects to Rule 5 of the Rules Governing Section 2254 Cases, showing cause why a writ of habeas corpus should not be granted based on petitioner's cognizable claim. Signed by Judge Maxine M. Chesney on 6/15/2006. (mmclc2, COURT STAFF) (Filed on 6/15/2006) (Entered: 06/15/2006) |
| 06/21/2006 | | Sent by CERTIFIED MAIL a copy of the 3 Order to Show Cause and a copy of the Petition to Respondent Steven Ornoski, Warden at Sierra Conservation Center Jamestown, California and to the Attorney General for the State of California. (aaa, Court Staff) (Filed on 6/21/2006) (Entered: 06/22/2006) |
| 08/09/2006 | 4 | Response to Order to Show Cause *Answer to Petition for Writ of Habeas Corpus; Supporting Memorandum of Points and Authorities* byS.W. Ornoski. (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3, Part 1 of 4# 4 Exhibit 3, Part 2 of 4# 5 Exhibit 3, Part 3 of 4# 6 Exhibit 3, Part 4 of 4# 7 Exhibit 4# 8 Exhibit 5# 9 Exhibit 6# 10 Exhibit 7, Part 1 of 3# 11 Exhibit 7, Part 2 of 3# 12 Exhibit 7, Part 3 of 3# 13 Exhibit 8, Part 1 of 4# 14 Exhibit 8, Part 2 of 4# 15 Exhibit 8, Part 3 of 4# 16 Exhibit 8, Part 4 of 4# 17 Exhibit 9# 18 Exhibit 10) (Heim, Patricia) (Filed on 8/9/2006) (Entered: 08/09/2006) |
| 08/09/2006 | 5 | CERTIFICATE OF SERVICE by S.W. Ornoski *Declaration of Service by U. S. Mail* (Heim, Patricia) (Filed on 8/9/2006) (Entered: 08/09/2006) |
| 09/08/2006 | 6 | STIPULATION AND [PROPOSED] ORDER *Stipulated Request for a Five-Day Extension of Time for Petitioner Mirabal to file his Traverse* by Michael Reyes Mirabal. (Satris, Michael) (Filed on 9/8/2006) Modified on 9/11/2006 (aaa, Court Staff). (Entered: 09/08/2006) |
| 09/08/2006 | 7 | STIPULATION AND ORDER extending deadline from September 8, 2006 to September 13, 2006 for plaintiff to file traverse. Signed by Judge Maxine M. Chesney on 9/8/2006. (mmclc2, COURT STAFF) (Filed on 9/8/2006) (Entered: 09/08/2006) |
| 09/13/2006 | 8 | Traverse *to the 4 Answer and Supporting Memorandum of Points and Authorities* byMichael Reyes Mirabal. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F)(Satris, Michael) (Filed on 9/13/2006) Modified on 9/14/2006 (aaa, Court Staff). (Entered: 09/13/2006) |
| 09/28/2006 | 9 | MOTION Petitioner?s Notice Of Motion And Motion For Evidentiary Hearing And Supporting Memorandum Of Points And Authorities filed by Michael Reyes Mirabal. Motion Hearing set for 11/17/2006 10:00 AM. (Satris, Michael) (Filed on 9/28/2006) (Entered: 09/28/2006) |
| 10/04/2006 | 10 | NOTICE by Michael Reyes Mirabal *Petitioner's Corrected Notice of Motion for Evidentiary Hearing* (Satris, Michael) (Filed on 10/4/2006) (Entered: 10/04/2006) |
| 10/04/2006 | | Set/Reset Deadlines as to 9 MOTION Petitioner?s Notice Of Motion And Motion For Evidentiary Hearing And Supporting Memorandum Of Points And Authorities. Motion Hearing Re-Noticed for 11/17/2006 09:00 AM. Re 10 Notice (aaa, Court Staff) (Filed on 10/4/2006) (Entered: 10/05/2006) |
| 10/12/2006 | 11 | Memorandum in Opposition *Respondent's Opposition to Petitioner's Notice and 9 Motion for Evidentiary Hearing; Supporting Memorandum of Points and Authorities* filed byS.W. Ornoski. (Heim, Patricia) (Filed on 10/12/2006) Modified on 10/16/2006 (aaa, Court Staff). (Entered: 10/12/2006) |

| 11/03/2006 | 12 | Reply to 11 Opposition *to Petitioner's Motion for Evidentiary Hearing* filed byMichael Reyes Mirabal. (Satris, Michael) (Filed on 11/3/2006) Modified on 11/6/2006 (aaa, Court Staff). (Entered: 11/03/2006) |
| 04/26/2007 | 13 | ORDER DENYING 9 PETITIONER'S MOTION FOR EVIDENTIARY HEARING; DENYING PETITION FOR WRIT OF HABEAS CORPUS. Signed by Judge Maxine M. Chesney on April 26, 2007. (mmcsec, COURT STAFF) (Filed on 4/26/2007) (Entered: 04/26/2007) |
| 04/27/2007 | 14 | JUDGMENT: Petitioner's motion for an evidentiary hearing is hereby DENIED. The petition for a writ of habeas corpus is hereby DENIED. ***Civil Case Terminated. (tl, COURT STAFF) (Filed on 4/27/2007) (Entered: 04/27/2007) |

MICHAEL REYES MIRABAL C-33639
SQSP 1-N-11 up
SAN QUENTIN CA. 94974

LEGAL MAIL



Clerk of the United States District Court
Northern District of California
450 Golden Gate Ave. Box 36060
San Francisco CA. 94102

RECEIVED
AUG 27 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



8-19-8